# In the United States Court of Federal Claims

### No. 20-229C
### Filed: August 20, 2020

* * * * * * * * * * * * * *    *

**MICHAEL HARVEY,**

             **Plaintiff,**

         **v.**

**UNITED STATES,**

         **Defendant.**

**<u>Pro Se</u> Plaintiff; Motion to Dismiss; Subject Matter Jurisdiction; Failure to State a Claim; Alleged Contract; Alleged Arbitration; Ratification; Tort; Criminal Conduct.**

* * * * * * * * * * * * * *    *

    **Michael Harvey**, <u>pro se</u>, Woodsville, MS.

    **Reta E. Bezak**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With her were **Franklin E. White**, Assistant Director, Commercial Litigation Branch, Civil Division, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, Civil Division, and **Ethan P. Davis**, Acting Assistant Attorney General, Civil Division.

## O P I N I O N

**<u>HORN, J.</u>**

    <u>Pro se</u> plaintiff Michael Harvey filed the above-captioned case in the United States Court of Federal Claims, seeking to enforce a purported arbitration award in favor of plaintiff which allegedly arose from an alleged contractual agreement between plaintiff and the United States. Plaintiff also seeks to correct his political status and nationality from citizen to foreign national, to recover estates allegedly held in trust, to "recover monetary values per terms of the contract," to remove "all Notices of Federal Tax Lien and Levy from all public recording offices and negative reporting of every kind and cease in any withholding from paycheck," and to claim exemption from federal tax liability. In response, defendant moved to dismiss plaintiff's complaint pursuant to Rule 12(b)(1) (2019) of the Rules of the United States Court of Federal Claims (RCFC) for lack of jurisdiction or pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

### FINDINGS OF FACT

    According to plaintiff's complaint, on or about July 1, 2019, Mr. Harvey drafted "a written, self-executing, irrevocable, binding contractual agreement which included an

arbitration clause,"[1] allegedly with the United States and several other individuals and entities. Plaintiff claimed: "I acting on my own behalf and on behalf of the US citizen choose not to enter or engage in contract unless it's under my terms." It does not appear that the United States was a party to or was consulted prior to the issuance of the contract by plaintiff. In the alleged contract, plaintiff names as defendants the United States Attorney General, the Internal Revenue Service, the Louisiana Attorney General, the Commissioner of the Louisiana Division of Administration, and Hancock Whitney Bank. The alleged contract is signed by none of these parties. Plaintiff asserts that he "has taken meaningful steps to establish his identity as a man, an American State National, non-taxpayer, foreign to U.S. jurisdiction." Mr. Harvey included the following "terms" in his alleged contract:

> You are to provide proof of claim as to the following, failure to provide proof of claim with specificities supported by evidence, facts and conclusions of common-law, shall result in an automatic forfeiture of all rights, privileges, immunities, and constitute a willful waiver and consent to the terms and conditions of this presentment in its entirety by the party failing to respond with specificity to each and every proof of claim/point of averment/question raised herein, creating estoppel as a result of tacit acquiescence.

According to plaintiff, the alleged contract provided 10 calendar days for defendants to respond and stated:

> My terms are spelled out within the body of this instrument, if you should except those/these terms in their entirety without exception and/or amendment and or augmentation, then we shall proceed. If you choose not to accept the terms of this contract, then you have subjected my person, my interests, my estate, my assets, my property to involuntary servitude, which is illegal in all venues within the borders of the United States of America, a crime for which it is punishable by imprisonment and a fine, and restitution for damage done. This shall serve as notice upon yourself and upon the agents acting in agreement and in conspiracy with you to accomplish the ends for which you presume justify the means. This shall serve as a notice upon yourself and upon the agents acting in agreement and in conspiracy with you to accomplish the ends for which you presume justify the means. You are held liable under the terms of arbitration specified herein, arbitration is an administrative remedy that has not been exhausted as yet, a remedy that remains available to my person, to my interests, to my estate, with reference my property.

---

[1] The court notes that plaintiff's complaint and other filings include spelling errors, missing words, grammatical errors, random capitalizations and emphasis as well as non sequiturs. In this Opinion, the plaintiff's language appears as in the plaintiff's filings.

The alleged contract further indicated:

> Acceptance of your offer is contingent on the aforementioned and your rebutting each and every one of the proof of claim herein, point by point with facts and conclusions of the law of the land, original jurisdiction, common law, and that I and my property and my Interest are to be considered and held fully indemnified against any and all consequences as this agreement entered into is without recourse on my behalf and interest.

The alleged contract included an arbitration clause which stated:

IV. **ARBITRATION- AN ADMINISTRATIVE REMEDY COGNIZABLE AT COMMON-LAW**

**10000.**       **ADDITIONALLY** it is exigent and of consequence for the Undersigned to inform Respondent(s), in accordance with and pursuant to the principles and doctrines of "clean hands" and good faith," that by Respondent(s) failure and or refusal to respond and provide the requested and necessary Proof of Claims raised herein above and thereby; and it shall be held and noted and agreed to by all parties, that a general response, a nonspecific response, or a failure to respond with specificities and facts and conclusions of common law, and or to provide the requested information and documentation that is necessary and in support of the agreement shall constitute a failure and a deliberate and intentional refusal to respond and as a result thereby and or therein, expressing the defaulting party's consent and agreement to said facts and as a result of the self-executing agreement, the following is contingent upon their failure to respond in good faith, with specificity, with facts and conclusions of the common-law to each and every averment, condition, and/or claim raised; as they operate in favor of the Undersigned, through "tacit acquiescence," Respondent(s) NOT ONLY expressly affirm the truth and validity of said facts set, established, and agreed upon between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, but Respondent(s); having agreed and consented to Respondent(s); having agreed and consented to Respondent(s) having a duty and obligation to provide the requested and necessary Proof of Claims raised herein above, will create and establish for Respondent(s) an estoppel in this matter(s), and ALL matters relating hereto; and arising necessarily therefrom;

           and,

**10001.**       In accordance with and pursuant to this agreement, a contractually (consensual) binding agreement between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim to include the corporate Government Agency/Department construct(s) whom Respondent(s) represents/serves; as well as, ALL officers, agents,

employees, assigns, and the like in service to the Respondent(s) will not argue, controvert, oppose, or otherwise protest ANY of the facts already agreed upon by the parties set and established herein; and necessarily and of consequence arising therefrom, in ANY future remedial proceedings(s)/actions(s), including binding arbitration and confirmation of the award in the Court of the United States of America at any competent court under original jurisdiction, in accordance with the general principles of non-statutory of Arbitration, wherein this Conditional Acceptance for the Value/Agreement/Contract no. MHH-BC-119-117-6200799A-FNICX-316071505-PSPAX-693391393© constitutes an agreement of all interested parties in the event of a default and acceptance through silence/failure to respond when a request for summary disposition of any claims or particular issue may be requested and decided by the arbitrator, whereas a designated arbitrator shall be chosen at random, who is duly authorized, and in the event of any physical or mental incapacity to act as arbitrator, the Undersigned shall retain the authority to select any neutral(s)/arbitrator(s) that qualify pursuant to the common law right to arbitration, as the arbitration process is a private remedy decided upon between the parties, and with respects this agreement, the defaulting party waives any and all rights, services, notices, and consents to the undersigned and or the undersigned's representative selection of the arbitrator thereby constituting agreement, and any controversy or claim arising out of or relating in any way to this Agreement or with regard to its formation, interpretation or breach, and any issues of substantive or procedural arbitrability shall be settled by arbitration, and the arbitrator may hear and decide the controversy upon evidence produced although a party who was duly notified of the arbitration proceeding did not appear; that the Undersigned deems necessary to enforce the "good faith" of ALL parties hereto within without respect to venue, jurisdiction, law, and forum the Undersigned deems appropriate.

. . .

**10002.** Further, Respondent(s) agrees the Undersigned can secure damages via financial lien on assets, properties held by them or on their behalf for ALL injuries sustained and inflicted upon the Undersigned for the moral wrongs committed against the Undersigned as set, established, agreed and consented to herein by the parties hereto, to include but not limited to: constitutional impermissible misapplication of statute(s)/law(s) in the above referenced alleged Commercial/Civil/Cause; fraud, conspiracy (two or more involved); trespass of title, property, and the like; and ALL other known and unknown trespasses and moral wrongs committed through ultra vires act(s) of ALL involved herein; whether by commission or omission. Final amounts of damages to be calculated prior to submission of a Tort Claim and/or the filing of a lien and the perfection of a security interest via a Uniform Commercial Code financing 1 Statement; estimated in excess

of TEN (10) Million dollars (USD- or other lawful money or currency generally accepted with or by the financial markets in America, as the value of this claim established at 25,000 dollars per twenty-three (23) minutes, 1,600,000 million dollars per day; and punitive damages within the above referenced alleged Criminal Case/Cause. [See: Trezevant v. City of Tampa, 741 F.2d 336 (1984), wherein damages were set as 25,000 per twenty-three 23 minutes in a false imprisonment case.]), and notice to Respondent('s) by invoice. Per Respondent('s) failure and or refusal to provide the requested and necessary Proof of Claims and thereby; and therein consenting and agreeing to ALL the facts set, established, and agreed upon between the parties hereto, shall constitute a self-executing binding irrevocable durable general power of attorney coupled with interests; this Conditional Acceptance for Value and counter offer/claim for Proof of Claim becomes the security agreement under commercial law whereby only the non-defaulting party becomes the secured party, the holder in due course, the creditor in and at commerce. It is deemed and shall always and forever be held that the undersigned and any and all property, interests, assets, estates, trusts commercial or otherwise shall be deemed consumer and household goods not-for-profit and or gain, private property, and exempt, not for commercial use, nontaxable as defined by the Uniform Commercial Code article 9 section 102 and article 9 section 109 and shall not in any point and/or manner, past, present and/or future be construed otherwise-see the Uniform Commercial Code article 3, 8, and 9.

As indicated by this agreement all parties associated hereto directly and/or indirectly agree under penalty of imprisonment for no less than five years to hold the arbitrator and the arbitration Association associated with this matter totally and completely immune from all consequences resulting from his or her carrying out their duties associated with this instant matter. That to protect the sanctity and the honor of the arbitration system the parties agree that the arbitrator's decision shall be final and binding upon all parties, and that no party shall attempt to retaliate, challenge, appeal, dispute, charge, allege, complain, and/or otherwise cause harm, stress, burden, conflict to the arbitrator and/or the arbitration Association with any matter associated hereto, directly or indirectly heretofore, henceforth, and any such attempts shall be held Null and void. That arbitration is the exclusive remedy for the parties, and that only the original arbitrator and/or that person's designee shall have the right to reconsider and/or amend the arbitration award, but only under the terms as specified within this agreement, and not otherwise. No other party except the arbitrator shall have the right of determining the validity of this contract, as the parties agree that this contract is a sufficient agreement documenting and detailing the consensus and understanding of the parties as of the institution of this agreement, which shall take full effect 10 calendar days after receipt and/or upon default.

Plaintiff states in his complaint that he mailed copies of the alleged contract to the defendants he named in his complaint between July 1, 2019, and July 6, 2019. According to plaintiff's complaint, defendant United States failed to respond to the contract within 10 calendar days of receiving the alleged agreement. Also in his complaint, plaintiff alleges:

> Between July 16 and July 22, 2019, all Respondent(s)/Defendant(s) received via first class priority mail Legal Notification-Notice of Fault Opportunity to Cure. This communication was to inform the Respondent(s)/Defendant(s) that they are in fault of the agreement, they have consented and agreed to all the terms and conditions contained therein including but not limited to the Self-Executing Irrevocable Binding Contractual Agreement and the Self-Executing Irrevocable Durable Power of Attorney Coupled with Interest.

According to plaintiff, defendants' failure to respond created a binding agreement between plaintiff and the named defendants and was "'tacit acquiescence' to ALL the facts" in the complaint as "true, correct, complete, and NOT misleading."

Furthermore, plaintiff states that he "invoked an independent arbitrator, as per enclosed agreement, on ~July 26, 2019 to decide once and for all regarding the dispute between the parties in accordance with the terms of the agreement/contract." Furthermore, according to the complaint, on August 12, 2019, an alleged arbitrator in Laurel, Mississippi, working with an entity known as "Sitcomm Arbitration Association," allegedly reviewed the alleged agreement submitted by plaintiff. According to plaintiff's complaint:

> The Arbitrator fully considered and granted the Petitioner(s)/Plaintiff(s) request for summary disposition and further considered all the evidence in reference to the Conditional Acceptance for the Value/Agreement/Contract no. MHH-BC-119-117-6200799A-FNICX-316071505-PSPAX-69339193©, its terms, promises, and obligations, as well as the facts presented during the arbitration of this controversy. The Arbitrator found that the Petitioner(s)/Plaintiff(s) and Respondent(s)Defendant(s) entered into a legally binding contractual relationship and that there was no fraud and/or any attempt to induce fraud and/or to commit fraud, and /or inducement of contract, and/or fraud in the factum respecting the instant matter and contract. Thus, the parties are bound by the terms and obligations agreed upon and imposed upon them as a direct result of the contractual agreement.[2]

Plaintiff alleges that he "has won a summary resolution, pursuant to Respondents(s)/Defendant(s) acquiescence" and that the alleged arbitration award "is

---

[2] There is no indication in the complaint or the record before the court if there was a hearing, either in person or telephonically, or how the alleged arbitrator reached a decision.

consistent with the terms of the agreement and the general principles of arbitration that have been delineated through the annuals a time." According to Mr. Harvey, the arbitrator awarded damages in the amount of $5,158,667.43 for an alleged breach of contract, $875,242.00 against the United States; $2,532,941.43 against the Internal Revenue Service; $875,242.00 against the Louisiana Attorney General and Commissioner of the Louisiana Division of Administration; and $875,242.00 against Hancock Whitney Bank. In his complaint, plaintiff seeks to enforce the arbitration award and collect "[a]dditional penalty's & damages" allegedly incurred "for each day back since the entering of the agreement and the default of infraction," $14,928,440.36 against the United States; $30,639,338.15 against the Internal Revenue Service; $10,928,440.36 against the Louisiana Attorney General and Commissioner of the Louisiana Division of Administration; and $2,915,242.00 against Hancock Whitney Bank for breach of contract, violation of copyright, unauthorized withholding of revenue, refusal to withdraw federal tax liens, violation of injunction, and breach of fiduciary duty for a total of $59,411,460.97.[3] According to plaintiff, on August 30, 2019, after defendants did not respond to plaintiff's notice of arbitration award, plaintiff sent a bill to all defendants attempting to enforce "the Final Arbitration Award dated August 12, 2019," demanding that defendants "cease and desist any further demand and/or attempt to collect fees and/or payments" and ordering defendants to release information demanded by plaintiff, as follows:

> Respondents are hereby ordered to release the demanded information of the Claimant which includes a full review and audit of all revenue for the MICHAEL HARVEY, MICHAEL H HARVEY and/or any derivative thereof, estate/trust over the past ten (10) years), any tax credits and/or deductions associated with the estate/trust, a copy of any insurance policies associated with the estate/trust and a copy of any bonds/securities held in respect to the estate/trust. The purpose of this information shall be for the Claimant to liquidate any and all assets of the estate/trust.

Plaintiff's complaint also asks to correct his political status and nationality from American to Louisianan. Plaintiff requests the removal of federal tax lien notices, surrender of securities allegedly held in estate by defendant, and exemption from federal tax collection. Furthermore, plaintiff requests relief in the form of "any amount that cannot be paid with value shall be delivered in twice the amount of land asset, with the Petitioner(s)/Plaintiff(s) having the choice of land locations, of which none are to be construed as desert land, hazardous land, uninhabitable land. (On Louisiana or Mississippi will be fine)." Without further detail, plaintiff also states that he illegally entered into a contract as a minor and that he has "disaffirmed any and all contracts made in infancy, and has the right to gain control over all securities held in their minor account. Respondent(s)/Defendant(s) has never and never will have a federal income tax liability according to the terms and conditions of the enclosed contract." Plaintiff accuses defendant of committing multiple crimes "under the presumption that Petitioner(s)/Plaintiff(s) is a decedent, an infant, dead, missing over the sea, or some kind

---

[3] Plaintiff's claims regarding the amount of damages he requests as due in his complaint are inconsistent.

of U.S. citizen, and demanding and enforcing debts through the Internal Revenue Service/IRS." Plaintiff seeks to enforce the purported arbitration award, asserting that "[t]here is no fraud, obvious miscalculations or misconduct on the part of the Arbitrator. This court has no authority or jurisdiction to rewrite the FFA [Federal Arbitration Act], challenge, vacate, or modify the contract or declare it frivolous."

As indicated above, defendant has moved to dismiss certain portions of plaintiff's complaint pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction because plaintiff seeks relief against the Louisiana Attorney General and the Louisiana Division of Administration Commissioner, as well as a private party, Hancock Whitney Bank, "over whom this Court does not possess jurisdiction." Moreover, according to defendant, this court does not have jurisdiction to adjudicate criminal conduct, tort claims, or allegations of citizenship issues. Defendant also moves to dismiss plaintiff's complaint on multiple grounds pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted, including that plaintiff seeks to affirm a questionable contract and questionable arbitration award. Defendant argues that plaintiff "fails to demonstrate the validity of either the alleged arbitration award or the purported contract that was the subject of the arbitration." Furthermore, defendant argues that plaintiff has not demonstrated a valid contract between plaintiff and the United States and that the contract was only signed by plaintiff. Moreover, defendant also notes that numerous courts have raised questions about alleged Sitcomm Arbitration Association awards.[4]

On June 23, 2020, plaintiff filed a response to defendant's motion to dismiss. Plaintiff claims that "[t]his court is treating arbitration as a lawsuit when it clearly is not" and that the court must enforce the purported arbitration award because "arbitration is not the business of the courts to interfere. Injunction and declaratory relief is a question of aritrability, not a federal, legal or judicial question, the courts may not override, overrule and or decide any issues concerning challenges to the contract as a whole or to arbitrability." Plaintiff asserts:

> Any challenges allowed by this court by any one is prohibited by the contract. All challenges are time-barred as a result of the ten (10) to twenty (20) calendar day statute of limitation embedded in the contract but also the ninety (90) days to contest the award. It is called res judicata that simply means that if you have a judgment from an arbitrator you can't go to another court of similar jurisdiction to obtain a different judgment.

---

[4] Defendant notes that "[t]his Court has recognized that Sitcomm's decisions tend to exhibit 'tarradiddle and lack of clarity.'" Schlihs v. United States, 146 Fed. Cl. 495, 497 n.1 (2020) (citing U.S. Bank Nat'l Ass'n v. Nichols, No. 19-CV-482-JED-FHM, 2019 WL 4276995, at *2-3 (N.D. Okla. Sept. 10, 2019)); Brown v. Ally Fin. Inc., No. 2:18-CV-70-KS-MTP, 2019 WL 6718672, at *3 n.1 (S.D. Miss. Dec. 10, 2019); see also Magee v. Nationstar Mortg., LLC, No. 5:19-MC-017-H, 2020 WL 1188445, at *1-2 (N.D. Tex. Mar. 11, 2020) (noting it is "one of the many cases in recent months where a court has repudiated an arbitration award made by Sitcomm" and finding the award "was procured by corrupt, fraudulent, and undue means").

Additionally, in plaintiff's response to the motion to dismiss, plaintiff alleges that the court improperly "charged me the fee for a civil litigation action when the motion to compel arbitration; motion to confirm arbitration award, motion to vacate, as prescribed the FAA [Federal Arbitration Act], are all governed by the FAA exclusively." Plaintiff concludes that "[t]he court needs to return [$]373.00, confirm and enforce the Arbitration Award as a judgment and enter judgment against the Defendant(s)/Respondent(s) in the amounts shown, without further delay." On July 10, 2020, defendant filed a reply to the motion to dismiss.

## DISCUSSION

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 575 U.S. 985 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Pauly v. United States, 142 Fed. Cl. 157 (2019); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (citing Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)); Gonzalez v. Thaler, 565 U.S. 134, 141 (2012); see also Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.,

476 F.3d 1329, 1330 (Fed. Cir. 2007). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also United States v. Mitchell, 463 U.S. 206, 216 (1983); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Golden v. United States, 118 Fed. Cl. 764, 768 (2014). In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver. . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the

government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. Testan, 424 U.S. [392,] 401-02 [1976] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009). The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (e.g., statutes or contracts)."). "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp., 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Price v. United States, 133 Fed. Cl. 128, 130 (2017); Peoples v. United States, 87 Fed. Cl. 553, 565-66 (2009).

In Maine Community Health Options v. United States, 140 S. Ct. 1308 (2020), the United States Supreme Court described the test for determining whether a statute waives sovereign immunity, as follows:

To determine whether a statutory claim falls within the Tucker Act's immunity waiver, we typically employ a "fair interpretation" test. A statute creates a "right capable of grounding a claim within the waiver of sovereign immunity if, but only if, it 'can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" United States v. White Mountain Apache Tribe, 537 U.S. 475, 472, 123 S.

Ct. 1126, 155 L. Ed. 2d 40 (2003) (quoting Mitchell, 463 U.S. at 217, 103 S. Ct. 2961); see also Navajo Nation, 556 U.S. at 290, 129 S. Ct. 1547 ("The other source of law need not *explicitly* provide that the right or duty it creates is enforceable through a suit for damages"). Satisfying this rubric is generally both necessary and sufficient to permit a Tucker Act suit for damages in the Court of Federal Claims. White Mountain Apache, 537 U.S. at 472–473, 123 S. Ct. 1126.

Maine Cmty. Health Options v. United States, 140 S. Ct. at 1328 (emphasis in original; footnote omitted).

When deciding a case based on a lack of subject-matter jurisdiction or for failure to state a claim, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Erickson v. Pardus, 551 U.S. at 94 ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508 n.1 (2002)))); see also Frankel v. United States, 842 F.3d 1246, 1249 (Fed. Cir. 2016) ("In deciding a motion to dismiss, a court is required to accept as true all factual allegations pleaded." (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009))); Fid. & Guar. Ins. Underwriters, Inc. v. United States, 805 F.3d 1082, 1084 (Fed. Cir. 2015); Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). Moreover, plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2019); Fed. R. Civ. P. 8(a)(1), (2) (2019); see also Ashcroft v. Iqbal, 556 U.S. at 677-78 (citing Bell Atl. Corp. v. Twombly, 550 U.S. at 555-57, 570). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also Am. Bankers Ass'n v. United States, 932 F.3d 1375, 1380 (Fed. Cir. 2019) ("To avoid dismissal under RCFC 12(b)(6) [for failure to state a claim], a plaintiff 'must allege facts '"plausibly suggesting (not merely consistent with)" a showing of entitlement to relief.'" (quoting Acceptance Ins. Cos., Inc. v. United States, 583 F.3d 849, 853 (Fed. Cir. 2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 557))); McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)); Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981) ("[C]onclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss."), aff'd, 460 U.S. 325 (1983). "A plaintiff's factual allegations must 'raise a right to relief above the

speculative level' and cross 'the line from conceivable to plausible.'" Three Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014). As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Mr. Harvey's allegations include grievances against officials of the United States Attorney General, the Internal Revenue Service, the Louisiana Attorney General, the Louisiana Division of Administration Commissioner, and Hancock Whitney Bank. With the exception of the United States Attorney General and the Internal Revenue Service, the remaining defendants named by the plaintiff are outside the jurisdiction of the United States Court of Federal Claims, "if the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court, or if its maintenance against private parties is prerequisite to prosecution of the suit against the United States the suit must be dismissed." United States v. Sherwood, 312 U.S. 584, 588 (1941); see also Cox v. United States, 105 Fed. Cl. 213, 216, appeal dismissed, 12-5108 (C.A. Fed. 2012); Stephenson v. United States, 58 Fed. Cl. 186, 190 (2003). "The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." United States v. Sherwood, 312 U.S. at 585; see also Redd v. United States, 147 Fed. Cl. 602, 607 (2020); Wolfing v. United States, 144 Fed. Cl. 626, 637 (2019); accord RCFC 10(a). The court "lacks jurisdiction 'over any claims alleged against states, localities, state and local government entities, or state and local government officials and employees.'" Weir v. United States, 141 Fed. Cl. 169, 177 (2018) (quoting Anderson v. United States, 117 Fed. Cl. 330, 331 (2014)); Kennedy v. United States, 138 Fed. Cl. 611, 618 (2018), appeal dismissed, 748 F. App'x 335 (Fed. Cir. 2019). This court also lacks jurisdiction over claims against private parties. United States v. Sherwood, 312 U.S. at 588; Shalhoub v. United States, 75 Fed. Cl. 584, 585 (2007) ("When a plaintiff's complaint names private parties, or state agencies, rather than federal agencies, this court has no jurisdiction to hear those allegations.") (citing Stephenson v. United States, 58 Fed. Cl. at 190); see also Woodson v. United States, 89 Fed. Cl. 640, 649 (2009). Therefore, this court lacks jurisdiction to review Mr. Harvey's claims against the Louisiana Attorney General, the Louisiana Division of Administration Commissioner, and Hancock Whitney Bank. Therefore, the allegations against the Louisiana Attorney General, the Louisiana Division of Administration Commissioner, and Hancock Whitney Bank are dismissed.

In addition, in his complaint, Mr. Harvey raises allegations of fraud, conspiracy, harassment, and breach of fiduciary duty. All of these allegations, albeit vague, appear to sound in tort. The Tucker Act, 28 U.S.C. § 1491, specifically excludes tort claims from the jurisdiction of the United States Court of Federal Claims:

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive

department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a); see also Keene Corp. v. United States, 508 U.S. 200, 214 (1993); Rick's Mushroom Serv. Inc., v. United States, 521 F.3d at 1343; Alves v. United States, 133 F.3d 1454, 1459 (Fed. Cir. 1998); Brown v. United States, 105 F.3d 621, 623 (Fed. Cir.) ("Because Brown and Darnell's complaints for 'fraudulent assessment[s]' are grounded upon fraud, which is a tort, the court lacks jurisdiction over those claims."), reh'g denied (Fed. Cir. 1997); Golden Pac. Bancorp v. United States, 15 F.3d 1066, 1070 n.8 (Fed. Cir.), reh'g denied, en banc suggestion declined (Fed. Cir.), cert. denied, 513 U.S. 961, (1994); Hampel v. United States, 97 Fed. Cl. 235, 238, aff'd, 429 F. App'x 995 (Fed. Cir. 2011), cert. denied, 565 U.S. 1153 (2012); Kant v. United States, 123 Fed. Cl. 614, 616 (2015) ("[Plaintiff's] claims for 'conversion and 'fraud' sound in tort . . . ."); Cox v. United States, 105 Fed. Cl. at 218 ("[P]laintiffs contend that the United States has engaged in tortious conduct, including harassment and persecution, malfeasance, fraud, abuse, and deception . . . . The Court of Federal Claims does not possess jurisdiction to entertain claims sounding in tort."); Jumah v. United States, 90 Fed. Cl. 603, 607 (2009) ("[I]t is well-established that the Court of Federal Claims does not have jurisdiction over tort claims."), aff'd, 385 F. App'x 987 (Fed. Cir. 2010); Woodson v. United States, 89 Fed. Cl. 640, 650 (2009); Fullard v. United States, 77 Fed. Cl. 226, 230 (2007) ("This court lacks jurisdiction over plaintiff's conspiracy claim because the Tucker Act specifically states that the Court of Federal Claims does not have jurisdiction over claims 'sounding in tort.'"); Edelmann v. United States, 76 Fed. Cl. 376, 379-80 (2007) ("This Court 'does not have jurisdiction over claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties'") (quoting Cottrell v. United States, 42 Fed. Cl. 144, 149 (1998)); McCullough v. United States, 76 Fed. Cl. 1, 3 (2006), appeal dismissed, 236 F. App'x 615 (Fed. Cir.), reh'g denied (Fed. Cir.), cert. denied, 552 U.S. 1050 (2007); Agee v. United States, 72 Fed. Cl. 284, 290 (2006); Zhengxing v. United States, 71 Fed. Cl. 732, 739, aff'd, 204 F. App'x 885 (Fed. Cir.), reh'g denied (Fed. Cir. 2006). Therefore, to the extent that plaintiff asserts allegations of fraud, conspiracy, harassment, or breach of fiduciary duty, plaintiff's tort claims are not within this court's jurisdiction and must be dismissed.

Additionally, Mr. Harvey alleges that the government has engaged in criminal misconduct and claims that he "has unnecessarily been harassed and financially stressed, such that their relentless pursuit has been on a level of criminal racketeering with Gestapo-type tactics including extortion, identify theft, confiscation of property, freezing of assets, derogatory reporting, criminal trespass on his person and estate, and paper terrorism." Although not addressed in defendant's motion to dismiss, the court notes that the jurisdiction of the United States Court of Federal Claims does not include jurisdiction over criminal causes of action. See Joshua v. United States, 17 F.3d 378, 379 (Fed. Cir. 1994); see also Whiteford v. United States, 148 Fed. Cl. 111, 122 (2020); Flippin v. United States, 146 Fed. Cl. 179, 183 (2019) (citing Joshua v. United States, 17 F.3d 378); Cooper v. United States, 104 Fed. Cl. 306, 312 (2012) ("[T]his court does not have jurisdiction over [plaintiff's] claims because the court may review neither criminal matters, nor the decisions of district courts." (internal citation omitted)); Mendes v. United States,

88 Fed. Cl. 759, 762, <u>appeal</u> <u>dismissed</u>, 375 F. App'x 4 (Fed. Cir. 2009); <u>Hufford v. United States</u>, 87 Fed. Cl. 696, 702 (2009) (holding that the United States Court of Federal Claims lacked jurisdiction over claims arising from the violation of a criminal statute); <u>Fullard v. United States</u>, 78 Fed. Cl. 294, 301 (2007) ("[P]laintiff alleges criminal fraud, a subject matter over which this court lacks jurisdiction." (citing 28 U.S.C. § 1491; <u>Joshua v. United States</u>, 17 F.3d at 379)); <u>McCullough v. United States</u>, 76 Fed. Cl. at 4 (finding that the United States Court of Federal Claims lacked jurisdiction to consider plaintiff's criminal claims); <u>Matthews v. United States</u>, 72 Fed. Cl. 274, 282 (finding that the court lacked jurisdiction to consider plaintiff's criminal claims), <u>recons.</u> <u>denied</u>, 73 Fed. Cl. 524 (2006). Therefore, all of Mr. Harvey's claims alleging criminal misconduct also must be dismissed for lack of jurisdiction.

Mr. Harvey further seeks enforcement of an alleged arbitration award based on an alleged contract, which plaintiff apparently unilaterally entered into without a signature by an authorized representative of the United States. Defendant argues that plaintiff has failed to state a claim upon which relief can be granted with respect to the alleged contract and the alleged arbitration award. When deciding a motion to dismiss based on failure to state a claim under RCFC 12(b)(6), this court assumes that the undisputed facts alleged in the complaint are true and draws all reasonable inferences in the non-movant's favor. See <u>Trusted Integration, Inc. v. United States</u>, 659 F.3d 1159, 1163 (Fed. Cir. 2011) (citing <u>Henke v. United States</u>, 60 F.3d at 797); <u>see</u> <u>also</u> <u>Oliva v. United States</u>, 961 F.3d 1359, 1362 (Fed. Cir. 2020) (citing <u>Jones v. United States</u>, 846 F.3d 1343, 1351 (Fed. Cir. 2017)); <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); <u>Boyle v. United States</u>, 200 F. 3d 1369, 1372 (Fed. Cir. 2000); <u>Perez v. United States</u>, 156 F.3d 1366, 1370 (Fed. Cir. 1998); <u>Highland Falls-Fort Montgomery Cent. School Dist. v. United States</u>, 48 F.3d at 1667 (citing <u>Gould, Inc. v. United States</u>, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); <u>Hamlet v. United States</u>, 873 F.2d at 1416; <u>Ho v. U.S.</u>, 49 Fed. Cl. 96, 100 (2001), <u>aff'd</u>, 30 F. App'x 964 (2002); <u>Alaska v. United States</u>, 32 Fed. Cl. at 695. If a defendant or the court challenges jurisdiction for plaintiff's claims for relief, however, a plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. See <u>McNutt v. Gen. Motors Acceptance Corp. of Ind.</u>, 298 U.S. 178, 189 (1936); <u>see</u> <u>also</u> <u>Reynolds v. Army & Air Force Exch. Serv.</u>, 846 F.2d 746, 747 (Fed. Cir. 1988); <u>Catellus Dev. Corp. v. United States</u>, 31 Fed. Cl. 399, 404-05 (1994). "A motion to dismiss under Rule [12(b)(6)] for failure to state a claim upon which relief can be granted is appropriate when the facts asserted by the claimant do not under the law entitle him to a remedy," <u>Perez v. United States</u>, 156 F.3d at 1370, as is the case with regards to plaintiff's complaint.

Pursuant to RCFC 12(b)(6), the court may dismiss a plaintiff's claims for failure to state a claim when no additional proceedings would enable the plaintiff to prove facts entitling him or her to prevail. <u>Magnum Opus Techs., Inc. v. United States</u>, 94 Fed. Cl. 512, 533-34 (2010) (citing <u>Levine v. United States</u>, 453 F.3d 1348, 1350 (Fed. Cir. 2006)); <u>Constant v. United States</u>, 929 F.2d 654, 657 (Fed. Cir. 1991) ("Nor is due process violated by a dismissal, even sua sponte, for failure to state a claim. . . . [N]o additional proceedings could have enabled [plaintiff] to prove any set of facts entitling him to prevail on his claim for relief."), <u>cert.</u> <u>denied</u>, 501 U.S. 1206 (1991); <u>see</u> <u>also</u> <u>Phonometrics, Inc.</u>

15

v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 793-94 (Fed. Cir. 2000) (in which the court formed about the particular facts of the case did not support a sua sponte dismissal for failure to state a claim). The court should dismiss a case for failure to state a claim only if "it appears beyond doubt that [plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Corrigan v. United States, 82 Fed. Cl. 301, 303-04 (2008) (quoting Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999)); see also Boyle v. United States, 200 F.3d at 1372; New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, en banc suggestion declined (1997); Consolidated Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied, 522 U.S. 1108 (1998); Gould, Inc. v. United States, 67 F.3d 925, 929-30 (Fed. Cir. 1995); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion [to dismiss] must be denied.'"); RCS Enterps., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

In support of his claims, Mr. Harvey attached a number of documents to his complaint, and he supplemented them on a periodic basis, including: 1) a copy of an alleged contract between plaintiff and the defendants he named, dated July 1, 2019, 2) copies of five demand letters from plaintiff to the United States Attorney General, the Commissioner of the Internal Revenue Service, the Louisiana Attorney General, the Commissioner of Administration of the State of Louisiana, and the Chief Executive Officer of Hancock Whitney Bank, all dated October 27, 2019; and 3) a copy of an alleged "award" by an arbitrator from the Sitcomm Arbitration Association, dated August 12, 2019, allegedly awarding damages against the United States in the amount of "$5,158,667.43." As alleged, plaintiff claims that these documents entitle him to judgment against the United States in the amount of $14,928,440.36.

To have privity of contract with the United States government, and, therefore, to invoke jurisdiction in the United States Court of Federal Claims for an alleged breach of contract claim, plaintiff "must show that either an express or implied-in-fact contract underlies [the] claim." Trauma Serv. Grp. v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997); see also Park Props. Assocs., L.P. v. United States, 916 F.3d 998, 1002 (Fed. Cir. 2019), cert. denied, 140 S. Ct. 857 (2020). "An express contract "'must be manifested by words, either oral or written which contains agreement and/or mutual assent.'"" Frankel v. United States, 118 Fed. Cl. 332, 335 (2014) (quoting Essen Mall Props. v. United States, 21 Cl. Ct. 430, 439 (1990), aff'd, 842 F.3d 1246 (Fed. Cir. 2016) (quoting Webster University v. United States, 20 Cl. Ct. 429, 433 (1990))). An implied-in-fact contract, however, is an agreement "'"founded upon a meeting of the minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding.'"" Trauma Serv. Grp. v. United States, 104 F.3d at 1325 (quoting Hercules, Inc. v. United States, 516 U.S. 417, 424 (1996) (quoting Balt. & Ohio R.R. Co. v. United States, 261 U.S. 592, 597 (1923))); see also Kam-Almaz v. United States, 682 F.3d 1364, 1368 (Fed. Cir. 2012); Bank of Guam v. United States, 578 F.3d 1318, 1329 (Fed. Cir. 2009) (citing

Trauma Serv. Grp. v. United States, 104 F.3d at 1326), reh'g and reh'g en banc denied (Fed. Cir. 2009), cert. denied, 561 U.S. 1006 (2010); Bay View, Inc. v. United States, 278 F.3d 1259, 1265-66 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 285 F.3d 1035 (Fed. Cir.), cert. denied, 537 U.S. 826 (2002); XP Vehicles. Inc. v. United States, 121 Fed. Cl. 770, 781 (2015); Westlands Water Dist. v. United States, 109 Fed. Cl. 177, 203 (2013); Peninsula Grp. Capital Corp. v. United States, 93 Fed. Cl. 720, 728 (2010) (citing Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 597; and Russell Corp. v. United States, 537 F.2d 474, 210 Ct. Cl. 596, 609 (1976)), appeal dismissed, 454 F. App'x 900 (Fed. Cir. 2011). Such an agreement will not be implied "unless the meeting of minds was indicated by some intelligible conduct, act or sign." Balt. & Ohio R.R. Co. v. United States, 261 U.S. at 598; see also Russell Corp. v. United States, 210 Ct. Cl. at 609.

The elements for both express and implied contracts with the United States are identical. See Night Vision Corp. v. United States, 469 F.3d 1369, 1375 (Fed. Cir. 2006) ("The elements of an implied-in-fact contract are the same as those of an oral express contract."), cert. denied, 550 U.S. 934 (2007); Hanlin v. United States, 316 F.3d 1325, 1328 (Fed. Cir. 2003) ("Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs."); City of Cincinnati v. United States, 153 F.3d 1375, 1377 (Fed. Cir. 1998). The required elements to demonstrate an express or implied contract are: "(1) mutuality of intent to contract; (2) consideration; and, (3) lack of ambiguity in offer and acceptance." Id.; see also Yifrach v. United States, 145 Fed. Cl. 691, 698 (2019), appeal filed, No. 20-1535 (Fed. Cir. Mar. 6, 2020); Bank of Guam v. United States, 578 F.3d at 1326 (quoting Trauma Serv. Grp. v. United States, 104 F.3d at 1325); see also Chattler v. United States, 632 F.3d 1324, 1330 (2011) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325); Hanlin v. United States, 316 F.3d at 1328 (citing City of Cincinnati v. United States, 153 F.3d at 1377)); Edwards v. United States, 22 Cl. Ct. 411, 420 (1991) (citing Essen Mall Props. v. United States, 21 Cl. Ct. at 440; Pac. Gas & Elec. Co. v. United States, 3 Cl. Ct. 329, 339 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984); and City of Klawock v. United States, 2 CL Ct. 580, 584 (1983), aff'd, 732 F.2d 168 (Fed. Cir. 1984)); see also Total Med. Mgmt., Inc. v. United States, 104 F.3d 1314, 1319 (Fed. Cir.) ("The requirements for a valid contract with the United States are: a mutual intent to contract including offer, acceptance, and consideration; and authority on the part of the government representative who entered or ratified the agreement to bind the United States in contract." (citations omitted)), reh'g and reh'g en banc suggestion denied (Fed. Cir.), cert. denied, 522 U.S. 857 (1997); San Carlos Irr. & Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989); Stanwyck v. United States, 127 Fed. Cl. 308, 312 (2016); Huntington Promotional & Supply, LLC v. United States, 114 Fed. Cl. at 767; Eden Isle Marina. Inc. v. United States, 113 Fed. Cl. 372, 492 (2013); Council for Tribal Emp't Rights v. United States, 112 Fed. Cl. 231, 243 (2013), aff'd, 556 F. App'x 965 (2014); Biofunction, L.L.C. v. United States, 92 Fed. Cl. 167, 172 (2010); Mastrolia v. United States, 91 Fed. Cl. at 384 (citing Flexfab, L.L.C. v. United States, 424 F.3d 1254, 1265 (2005)).

When the United States is a party to an alleged express or implied-in-fact contract, "a fourth requirement is added: The government representative whose conduct is relied upon must have actual authority to bind the government in contract." City of Cincinnati v.

United States, 153 F.3d at 1377 (quoting City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)); see Trauma Serv. Grp. v. United States, 104 F.3d at 1325; Total Med. Mgmt. v. United States, 104 F.3d 1314, 1319 (Fed. Cir. 1997) (citing Thermalon Indus. v. United States, 34 Fed. Cl. 411, 414 (1995)); Weeks v. United States, 124 Fed. Cl. 630, 633 (2016); Vargas v. United States, 114 Fed. Cl. 226, 233 (2014); Prairie Cnty., Mont. v. United States, 113 Fed. Cl. 194, 202 (2013), aff'd, 782 F.3d 685 (Fed. Cir.), cert. denied, 136 S. Ct. 319 (2015); California Human Dev. Corp. v. United States, 87 Fed. Cl. 282, 293 (2009), aff'd, 379 F. App'x 979 (Fed. Cir. 2010); Aboo v. United States, 86 Fed. Cl. 618, 629, aff'd, 347 F. App'x 581 (Fed. Cir. 2009); SGS-92-X003 v. United States, 74 Fed. Cl. 637, 653-54 (2007); Arakaki v. United States, 71 Fed. Cl. 509, 514 (2006), aff'd, 228 F. App'x 1003 (Fed. Cir. 2007); Fincke v. United States, 230 Ct. Cl. 233, 243-44, 675 F.2d 289, 295 (1982); Russell Corp. v. United States, 210 Ct. Cl. at 608-09. As a general proposition, "[t]he law requires that a Government agent who purports to enter into or ratify a contractual agreement that is to bind the United States have actual authority to do so." Monarch Assurance P.L.C. v. United States, 244 F.3d 1356, 1360 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001) (citing Trauma Serv. Grp. v. United States, 104 F.3d at 1325). "The corollary is that any party entering into an agreement with the Government accepts the risk of correctly ascertaining the authority of the agents who purport to act for the Government . . . ." Id. (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947); see also Snyder & Assocs. Aquisitions LLC v. United States, 133 Fed. Cl. 120, 126 (2017). "In the absence of either actual or constructive knowledge of the unilateral contract, the CO's silence cannot be a ratification of the unilateral contract." Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429, 1433–34 (Fed. Cir. 1998), cert. denied, 525 U.S. 1177 (1999); Three Consulting v. United States, 104 Fed. Cl. at 524.

Mr. Harvey alleges that he "entered unto a legally binding relationship with the United States "[o]n or about July 1, 2019" and that "the parties are bound by the terms and obligations agreed upon and imposed upon them as a direct result of the contractual agreement." Additionally, Mr. Harvey alleges that the government entered into a "written, self-executing, irrevocable, binding contractual agreement which included an arbitration clause," but the contract is signed only by Mr. Harvey. According to Mr. Harvey, the alleged contract constituted automatic "Conditional Acceptance for Value and counter offer/claim For Proof of Claim as said facts operate in favor of the Undersigned." Despite Mr. Harvey's allegations of automatic or conditional contract acceptance, Mr. Harvey fails to offer evidence of any mutual intent between Mr. Harvey and the United States to form an enforceable contract. In the record currently before the court, there is no documentation of an express contract, nor of a written agreement with Mr. Harvey and no signature by an authorized representative of the United States, although plaintiff claims that "parties to a contract are not determined by signature" and "silence equates to 'consent.'" Mr. Harvey incorrectly claims that "'consent' can be obtained, and is free and mutual when obtained, through duress, menace, fraud, undue influence, and or mistake" and that "all contracts, whether express or implied, are not subject to the universal 'essentials' of 'contract law,' pertaining to the fundamentals of the interaction between the parties." There is no evidence in the record of any "duress, menace, fraud, undue influence, and or mistake."

Mr. Harvey also alleges that the government's failure to respond to the alleged agreement served as "ratification" of the contract:

> Further, failure and/or refusal by Respondent('s) to provide the requested and necessary Proof of Claims raised herein above shall act/operate as ratification by Respondent('s) that ALL facts as set, established, and agreed upon between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, are true, correct, complete, and NOT misleading.

Although Mr. Harvey claims that "failure and/or refusal by Respondent('s) to provide the requested and necessary Proof of Claims raised herein above shall act/operate as ratification," there is no evidence in the record before the court that an authorized representative of the United States ever executed or ratified a valid contract with Mr. Harvey. Mr. Harvey listed the "terms" of his alleged contract without consulting authorized government officials and claimed to be "acting on my own behalf and on behalf of the US citizen." Mr. Harvey informed defendants that "[m]y terms are spelled out within the body of this instrument, if you should except those/these terms in their entirety without exception and/or amendment and or augmentation, then we shall proceed." Both Mr. Harvey's complaint and the alleged arbitration award state that the government never expressly agreed to the terms of the agreement, but Mr. Harvey now argues before this court that the defendant's failure to respond to the alleged contract "constituted an act of 'tacit acquiescence.'" According to Mr. Harvey, "[b]y defaulting on their obligation to respond, as respondents had a duty to respond, the default although willful constituted assent per terms of the agreement. The Respondents conduct is not actual silence, silence constitutes acceptance." The alleged contract included with plaintiff's complaint states:

> Should the Respondent(s) fail and/or not respond directly to each Proof of Claim with specific specificity or otherwise refuse to provide the requested and necessary Proof of Claims raised herein above within the expressed period of time established and set herein above, Respondent('s) will have failed to State any claim upon which relief can be granted. Further, Respondent('s) will have agreed and consented through "tacit acquiescence" to ALL the facts in relation to the above referenced alleged Instant matter/Criminal Case/Civil Cause/Action upon exercise of a right, as raised herein above as Proof of Claims herein; and ALL facts necessarily and of consequence arising there from, are true as they operate in favor of the Undersigned, and that said facts shall stand as prima facie and ultimate (un-refutable) between the parties to this Conditional Acceptance for Value and counter offer/claim for Proof of Claim, the corporate Government juridical construct('s) Respondent('s) represents/serves, and ALL officers, agents, employees, assigns, and the like in service to Respondent('s), as being undisputed.

As stated by a Judge of the United States Court of Federal Claims, "[a] person simply cannot, as plaintiff has attempted, unilaterally impose a 'settlement agreement' (or any type of contract) on another party." Rohland v. United States, 136 Fed. Cl. 55, 67 (2018). The circumstances surrounding the agreement Mr. Harvey alleges came into existence do not demonstrate that the government's silence amounted to an agreement to contract with Mr. Harvey. Instead, the record indicates that Mr. Harvey is attempting to unilaterally impose a contract upon defendants for personal financial gain. Mr. Harvey claims that "the enclosed contract with arbitration clause is paramount and was and is agreed upon by all parties, this is not a claim, it's a contract, and the contract rules and has all the power and all Respondent(s)/Defendant(s) have waived all traces of immunity." Mr. Harvey also claims that "an unsigned contract can be enforced upon a party" if the other party "has knowledge of the contract and performs under the provisions of the contract" and that his alleged contract, though unsigned, "creates an obligation to do or not to do a particular thing." The record before this court does not reflect that the defendant ever intended to enter into a binding agreement with Mr. Harvey. Accordingly, the record does not demonstrate that there was the required intent and mutual assent required to form a binding agreement with the United States. Based on the record before the court, no contract between plaintiff and defendant ever came into existence, and, therefore, plaintiff's claims relating to the existence of the a contract are dismissed.

Moreover, with respect to plaintiff's allegations regarding an arbitration award to plaintiff to enforce the alleged, non-existent contract, although arbitration agreements can be subject to contract law, contract law principles hold that non-parties to a contract generally are not bound by such a contract, and arbitration contracts are no exception. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) ("[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." (quoting United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960))); Datatreasury Corp. v. Wells Fargo & Co., 522 F.3d 1368, 1372 (Fed. Cir. 2008) ("'In order to be subject to arbitral jurisdiction, a party must generally be a signatory to a contract containing an arbitration clause.'" (quoting Bridas S.A.P.I.C. v. Gov't of Turkm., 345 F.3d 347, 353 (5th Cir. 2003)). If the parties have agreed that a judgment of the court shall be entered upon the award made pursuant to an arbitration, courts will generally enforce an arbitration award unless the award is vacated, modified, or corrected. See 9 U.S.C. § 9 (2018). When a party moves to compel arbitration of a dispute, the court "must determine whether the parties agreed to arbitrate that dispute." Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626 (1985); see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 683 (2010); Washington Partners II, L.P. v. United States, 34 Fed. Cl. at 443. An arbitrator, however, only has the power to grant an award if the parties have agreed to submit the matter to arbitration in advance. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. at 684. Thus, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)) (emphasis in original); AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648-49 (1986); Tenaska Washington Partners II, L.P. v. United States, 34 Fed. Cl. at 438. Moreover, federal courts may hear lawsuits attempting to enforce an arbitration award

only when there is an independent basis for jurisdiction. See Schlihs v. United States, 146 Fed. Cl. 495, 499 (2020) (citing Builders Int'l (Senegal) S.A. v. United States, 211 Ct. Cl. 362, 363 (U.S. 1976). As explained by a Judge of the United States Court of Federal Claims in Schlihs v. United States:

> At its core, the complaint reflects Ms. Schlihs's attempt to confirm an arbitration award. Federal courts may entertain such lawsuits, 9 U.S.C. § 9 (2018), only when there is an independent basis for jurisdiction. Here, there is no such basis. The court's jurisdiction is limited to claims against the United States, 28 U.S.C. § 1491(a)(1), and Ms. Schlihs is not challenging actions taken by the United States. Indeed, she alleges that her "matter is against institution(s) registered and licensed with the United States," and her filings reflect the same focus on purported wrongdoing by nongovernmental entities—the Banks. Moreover, the court lacks jurisdiction over claims that are not grounded in a contract with the United States or another money-mandating source of law, and Ms. Schlihs fails to identify such a source of law. She references a contract, but there is no coherent allegation that the contract is with the United States . . . . And Ms. Schlihs's request for equitable relief is beyond this court's jurisdiction because, as explained above, she has not identified a colorable claim for monetary damages.

Schlihs v. United States, 146 Fed. Cl. at 498–99 (citations and internal references omitted).

Mr. Harvey further argues that "[t]here are very few exceptions to overturn an arbitration award and none exist in this matter." (citations omitted). In his response to defendant's motion to dismiss, Mr. Harvey claims that the Federal Arbitration Act "prohibits the courts from claiming that the contract is invalid, revocable, or non-binding i.e. 'a bizarre jumble of inconsistent, nonsensical word salad'. Only the arbitrator may make such a determination." As noted above, however, courts cannot enforce an arbitration agreement unless there is clear and unmistakable evidence that the parties agreed to arbitrate a dispute. See United States Capitol Police v. Office of Compliance, 916 F.3d 1023, 1027 (Fed. Cir. 2019) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. at 297; see also Howsam v. Dean Witter Reynolds, Inc., 537 U.S. at 83; E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 294 (2002) ("'Arbitration under the [FAA] is a matter of consent, not coercion.'" (quoting Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ., 489 U.S. at 479)); Bailey v. United States, 52 Fed. Cl. 105, 114 (2002) (citing E.E.O.C. v. Waffle House, Inc., 534 U.S. at 294). If a party sues to enforce an arbitration award and the United States is the defendant, "the consent to be sued must be clear and unequivocal." Builders Int'l (Senegal) S.A. v. United States, 211 Ct. Cl. at 363 (citing United States v. Testan, 424 U.S. at 394). Mr. Harvey incorrectly claims that "[y]ou cannot say you did not get notice. You cannot say that the contract does not contain a valid arbitration clause" and alleges that the Federal Arbitration Act "states that the court 'must grant' the order to confirm the arbitration award." A court cannot enforce an arbitration

award against the government to arbitrate if the government was not a party to the arbitration agreement that formed the basis of Mr. Harvey's demand for dispute resolution. In this case, plaintiff has failed to offer any evidence of a valid contract or valid agreement, and has not demonstrated the United States agreed to submit a dispute to arbitration. Mr. Harvey also claims that "a 'no party present' hearing – de novo ruling can be determined solely based on documentary records. The Supreme Court has held that such hearings as long as there is notice given prior to the hearing and due process is not violated." There is no evidence, however, that defendants ever received notice of any alleged arbitration hearing or that there ever was an arbitration hearing on the alleged, but non-existent contract.

The court further notes that numerous federal courts have expressed serious concerns regarding the alleged arbitration association, Sitcomm Arbitration Association that issued the alleged arbitration award to Mr. Harvey. A Judge of the United States Court of Federal Claims noted that "tarradiddle and lack of clarity seems to be a recurring theme in Sitcomm's decisions." Schlihs v. United States, 146 Fed. Cl. at 497 n.1 (citing U.S. Bank Nat'l Ass'n v. Nichols, 2019 WL 4276995, at *2-3 (describing a Sitcomm Arbitration Association decision as "not the pinnacle of clarity" and quoting other federal courts' appraisal of Sitcomm Arbitration Association's decisions as "a 'bizarre jumble of inconsistent, nonsensical word salad' 'memorialized in 28 pages of uninformative blatherskite'")). Decisions by Judges of other federal courts go even farther than the Schlihs decision in criticizing Sitcomm. See, e.g., Castro v. Bank of New York Mellon, No. 3:20-CV-264-MOC-DSC, 2020 WL 2542864, at *1 (W.D.N.C. May 19, 2020) (denying the confirmation of a Sitcomm Arbitration Association arbitration award and noting that "many institutions have recently been experiencing an influx of fake arbitration awards" and that "[t]his scam is being perpetrated across the country, and numerous courts have recognized that these purported awards are unenforceable"); Rodrick v. Putnam Cty. Tax Collector, No. 3:20-CV-174-J-20MCR, 2020 WL 2768779, at *1 (M.D. Fla. Apr. 27, 2020) (noting that "most, if not all, of the motions to confirm" Sitcomm arbitration awards have been denied), report and recommendation adopted, No. 3:20-CV-174-J-20MCR, 2020 WL 2767573 (M.D. Fla. May 27, 2020). The United States District Court for the Southern District of Mississippi explained:

> Sitcomm is a sham arbitration organization that uses the guise of legitimacy to market itself as an authorized and legitimate arbitration company to attract paying customers and collect fees. After Sitcomm extracts an arbitration 'fee' from these customers, Sitcomm then issues fake exorbitant final arbitration awards against various entities, despite no arbitration hearing having ever been held, no arbitration provision existing that permits the parties to arbitrate their claims, and without proper notice or an opportunity for any party to be heard.

PennyMac Loan Servs., LLC v. Sitcomm Arbitration Ass'n, No. 2:19-CV-193-KS-MTP, 2020 WL 1469458, at *1 (S.D. Miss. Mar. 26, 2020) (internal reference omitted); see also Meekins v. Lakeview Loan Servicing, LLC, No. 3:19CV501 (DJN), 2019 WL 7340300, at *3-4 (E.D. Va. Dec. 30, 2019) (expressing "great skepticism about the validity of SAA

[Sitcomm Arbitration Association] as an arbitration entity" and determining that the Sitcomm arbitrator "demonstrated a 'manifest disregard of the law' in reaching the Award" because "[m]ost of the language in the Award appears as an effort to convince a reviewing court of its legitimacy; yet, the language has the opposite effect . . . . the Award has no legal validity and could only have been the product of undue means"); Kalmowitz v. Fed. Home Mortg. Corp., No. CV619MC00010JCBJDL, 2019 WL 6249298, at *2-3 (E.D. Tex. Oct. 22, 2019) ("The purported arbitration agreement and award do not appear to have any meritorious basis in fact or law, and Sitcomm does not appear to be a valid entity of arbitration . . . . The whole of the 22-page document, drafted with repetitive, nonsense legalese, contains no factual or legal conclusions from which this Court could deduce the existence of a valid contract, let alone a valid agreement to arbitrate.") report and recommendation adopted, No. 6:19-MC-00010, 2019 WL 6249426 (E.D. Tex. Nov. 21, 2019); see also Magee v. Nationstar Mortg., LLC, No. 5:19-MC-017-H, 2020 WL 1188445, at *3 (N.D. Tex. Mar. 11, 2020) (expressing "concern with the extent and breadth of Sitcomm's seemingly fraudulent activity" and noting that "[u]sing the court system to file fraudulent claims burdens defendants, wastes judicial resources, and weakens the public's perception of the judicial branch"); Teverbaugh v. Lima One Capital, LLC, No. CV219MC159KSMTP, 2020 WL 448259, at *2 n.1 (S.D. Miss. Jan. 28, 2020) ("There has been a recent rash of cases involving arbitration awards issued by arbitrators with SAA filed not only in this Court but also in other jurisdictions."); Brown v. Ally Fin. Inc., No. 2:18-CV-70-KS-MTP, 2019 WL 6718672, at *3 n.1 (S.D. Miss. Dec. 10, 2019) (referring to awards issued by Sitcomm Arbitration Association as "parts of a larger fraudulent enterprise" and warning parties "that it will not permit anyone to waste judicial resources by seeking enforcement of fraudulent 'arbitration awards'"), appeal dismissed, 2020 WL 4757041 (5th Cir. 2020). According to Sitcomm Arbitration Association's website, the entity does not employ lawyers or experienced arbitrators. Instead, the entity employs "a group of individuals who have either a Masters [sic] degree and/or a Bachelors [sic] degree in several varying fields including law, administration, real estate, contract and so on." Sitcomm Arbitration Association Home Page, https://saalimited.com/index.html (last visited August 20, 2020).

In the case currently before this court, Mr. Harvey has failed to submit any document that appears to be a valid, enforceable contract or arbitration agreement. The alleged arbitration award is not comprehensible and lacks clarity. The purportedly valid award contains no specific factual findings or legal conclusions and exclusively cites the alleged contract word-for-word to determine damages. Moreover, the terms of the alleged contract cited in the purported award are the exact same terms used in the "Infant Estate Contract" template found on the Sitcomm Arbitration Association website.[5] Even if a valid contract had existed, it would have been difficult to interpret the language of the purported arbitration award plaintiff alleges was issued. Further, without an underlying valid

---

[5] According to Sitcomm Arbitration Association's website, "[t]he government holds the assets of the American people in trust, this contract is utilized to help individuals gain control of the securities held in the Minor Trust account all of the key features are included in the agreement." All Things Arbitration, Sitcomm Arbitration Association, https://sitcommllc.com/page6.html (last visited August 20, 2020).

contract, there is no agreement by which an alleged arbitration award could have come into existence. Under the circumstances presented in the case brought by Mr. Harvey, he cannot prove any set of facts entitling him to relief in this court. Accordingly, this court finds that plaintiff has failed to state a claim against the United States upon which relief can be granted. See RCFC 12(b)(6).

To the extent that Mr. Harvey claims that he is an "American State National, non-taxpayer, foreign to U.S. jurisdiction" and makes other claims related to these statements in his complaint, the jurisdiction of the United States Court of Federal Claims does not include jurisdiction over citizenship issues. See 28 U.S.C. § 1491(a); see also 28 U.S.C. § 1350 (2018). In a letter filed in the Wilkinson County Mississippi Recoding District, dated August 17, 2018, Mr. Harvey attempts to renounce his United States citizenship, as follows:

> Whereas [Harvey] is a naturalized "citizen of the United States" under the Diversity Clause of the Constitution(s) and is the age of majority and whereas such citizenship was never desired nor intended nor willingly not voluntarily entered into under conditions of full disclosure [Harvey] willingly and purposefully renounces all citizenship or other assumed political status related to the United States . . . . and does repatriate to the land of HIS birth known as Louisiana and does freely affirm HIS allegiance to the same actual and organic state of the Union and does reclaim HIS true Nationality as an American State National and an American State Vessel in all international trade and commerce operated by [Harvey].

In the same letter, Mr. Harvey also claims that he is a "Foreign Sovereigns from the Louisiana state of The United States of America" and, therefore, "not subject to Territorial or Municipal United States law and are owed The Law of Peace from all Territorial and Municipal Officers and employees who otherwise have no permission to approach or address" him. (internal citations omitted). Mr. Harvey appears to seek federal tax exemption and claims that he is "an American State National, non-taxpayer, foreign to U.S. jurisdiction" and therefore "not subject to Territorial or Municipal United States law." Despite Mr. Harvey's claims, the state of Louisiana is part of the United States and is subject to United States law. See U.S. Const. art. VI, cl. 2; La. Const. art. 4 §5; Amgen Inc. v. Sandoz Inc., 877 F.3d 1315, 1326 (Fed. Cir. 2017). Moreover, the Fourteenth Amendment states that "[a]ll persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. Mr. Harvey, appears to be a United States citizen.[6] Every United States citizen is obligated to pay taxes. See Buser v. United States, 85 Fed. Cl. 248, 263 (2009); Betz v. United States, 40 Fed. Cl. 286, 296, appeal dismissed, 155 F.3d 568 (Fed. Cir. 1998). Because he appears to be a United States citizen, Mr. Harvey

---

[6] Throughout his complaint and alleged contract, Mr. Harvey claims to be a citizen of the state of Louisiana. The court notes, however, that in his filings Mr. Harvey lists an address in Woodsville, Mississippi as his current place of residence.

is subject to the laws of the United States and is not exempt from federal tax collection. See 26 U.S.C. § 7701 (2018).

Mr. Harvey also asserts that the court improperly "charged me the fee for a civil litigation action" and seeks a refund of his "[$]373.00" filing fee.[7] In the United States Court of Federal Claims, "[c]ourt fees are prescribed by the Judicial Conference of the United States pursuant to 28 U.S.C. § 1926(a)," which requires fees "charged for services provided by the United States Court of Federal Claims," including filing a civil action. RCFC 77.1(c)(1); 28 U.S.C. § 1926 (2018) ("The court and its officers shall collect only such fees and costs as the Judicial Conference prescribes. The court may require advance payment of fees by rule."). Exemption from payment of the court filing fee constitutes an exception to this general rule and is appropriate only in specifically delineated circumstances. See M.L.B. v. S.L.J., 519 U.S. 102, 103 (1996); Thompson v. United States, 103 Fed. Cl. 16, 18–19 (2011); see also Bell v. Clark, 194 F.3d 781, 782 (7th Cir. 1999); Strock v. Vanhorn, 919 F. Supp. 172, 173 (E.D. Pa. 1996). While the court may authorize the commencement of a civil action "without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets," Mr. Harvey did not file such an affidavit, and instead chose to pay the court's required filing fee. Mr. Harvey has presented no evidence indicating that the court improperly charged him a filing fee to support his request for a refund of the filing fee, and the court determines the collection of a filing fee in the above captioned case was appropriate. Accordingly, Mr. Harvey's request for a refund is denied.

The court reminds Mr. Harvey that litigation is serious business to be undertaken carefully and thoughtfully. The United States Court of Federal Claims "and other federal courts are funded by the taxpayers of this country to adjudicate genuine disputes, not to function as playgrounds for would-be lawyers or provide an emotional release for frustrated litigants." Constant v. United States, 929 F.2d at 659. Further, "[w]here, as here, a party's argument flies in the teeth of the plain meaning of the statute and raises arguments with utterly no foundation in law or logic . . . the judicial process is abused and the funds provided by Congress via the taxpayers to the Justice Department are wasted." Abbs v. Principi, 237 F.3d 1342, 1351 (Fed. Cir. 2001); see Aldridge v. United States, 67 Fed. Cl. 113, 123 (2005). Over the past five years, Mr. Harvey has presented other filings against the United States Attorney General and Internal Revenue Service, as well as other individuals and entities not within the jurisdiction of this court. For example, in 2015, Mr. Harvey filed suit against the United States in the United States District Court for the Middle District of Louisiana, alleging that the government unlawfully levied taxes against him, assessed penalties for frivolous tax filings, negligently failed to release tax liens, and "engaged in reckless, intentional, or negligent collection actions" when unlawfully collecting taxes against him. Harvey v. United States, No. 15-CV-00819, 2017 WL 5347592, at *4 (M.D. La. Nov. 13, 2017), appeal denied, 2018 WL 3641028 (M.D. La.,

---

[7] When filing a complaint in the United States Court of Federal Claims, litigants are responsible for paying the $400.00 court filing fee. Although Mr. Harvey claims that the court improperly charged him a "[$]373" filing fee, the record before the court indicates that Mr. Harvey paid the $400.00 court filing fee in its entirety on February 27, 2020.

July 10, 2018). The court found that Mr. Harvey's complaint failed to offer any evidentiary or legal support for his claims and granted the United States' motion for summary judgment. See <u>Harvey v. United States</u>, No. CV 15-00819-JJB-EWD, 2017 WL 5347592, at *10. Thereafter, in 2017, Mr. Harvey "filed a Motion for a New Trial, asking the Court to grant him a new trial because the Court 'made numerous legal and factual errors and there is newly-discovered evidence, as well as present evidence that has been ignored.'" <u>Harvey v. United States</u>, No. CV 15-00819-BAJ-EWD, 2018 WL 3641028, at *1 (M.D. La. July 10, 2018) (brackets in original). The court found that Mr. Harvey's motion was incomprehensible and denied his motion for a new trial "because the Court dismissed his case on summary judgment without holding a trial." <u>Harvey v. United States</u>, No. CV 15-00819-BAJ-EWD, 2018 WL 3641028, at *1.

Because Mr. Harvey's complaint raises only unenforceable contract claims and claims which are not within this court's jurisdiction to adjudicate, this court dismisses plaintiff's complaint for lack of jurisdiction and failure to state a claim. Moreover, plaintiff's claims are dismissed as frivolous. See <u>Thompson v. United States</u>, 145 Fed. Cl. 641, 645 n. 5 (2019) (citing <u>United States v. Sterling</u>, 738 F.3d 228, 233 n.1 (11th Cir. 2013)); <u>Cycenas v. United States</u>, 120 Fed. Cl. 485, 503-04 (2015); <u>Mega Constr. Co. v. United States</u>, 29 Fed. Cl. 396, 504 (1993) (dismissing unsubstantiated claims as frivolous and addressing "plaintiff's claims that, in most instances, were unsupported and presented in a random, rambling manner" and noting that "the advancement of claims clearly having no support in federal contract or common law have wasted valuable judicial resources and defendant's time and finances").

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiff's complaint is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk's Office shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED.**

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**